UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ODETTE NARVAEZ GRIJALVA,

                Petitioner,

vs.                         Case No. 2:06-cv-569-FtM-29DNF

JAVIER LUNA ESCAYOLA,

                Respondent.
_____

**OPINION AND ORDER**

This matter comes before the Court on Odette Narvaez Grijalva's (petitioner) Verified Petition for Return of Minor Children to Petitioner (Doc. #1), filed on October 19, 2006. Petitioner alleged that Javier Luna Escayola (respondent) wrongfully removed their minor children (Dana Luna Narvaez and Thot Luna Narvaez, collectively "the minor children") from Mexico and has wrongfully retained them in Cape Coral, Florida. The Petition was filed pursuant to the Hague Convention on the Civil Aspects of International Child Abduction, Oct. 25, 1980, T.I.A.S. No. 11670 (the "Hague Convention"), as implemented by the International Child Abduction Remedies Act, 42 U.S.C. §§ 11601-11610 ("ICARA").

On October 23, 2006, the Court entered an Order (Doc. #5) setting a final hearing on the Petition for December 18, 2006, and ordering that respondent not remove or cause to be removed the minor children from the territorial jurisdiction of the Court.

Respondent filed a letter Answer (Doc. #11) on November 17, 2006. Based upon respondent's representation that he was going to remove the minor children from the United States in violation of the Court's Order (Doc. #5), on December 8, 2006, the Court directed a warrant for respondent's arrest be issued.  (Doc. #14.)   The scheduled final hearing was held December 18, 2006, and respondent did not appear.

## I. Legal Principles

To address the harm done to children[1] by international parental kidnaping, the Hague Convention is designed to restore the factual status quo and protect the legal rights of the non-abducting parent. Ruiz v. Tenorio, 392 F.3d 1247, 1250 (11th Cir. 2004.)  The stated objectives of the Hague Convention are (1) to "secure the prompt return of children wrongfully removed or retained in any Contracting State," and (2) to "ensure that rights of custody and of access under the law of one Contracting State are effectively respected in other Contracting States."  Furnes v. Reeves, 362 F.3d 702, 710 (11th Cir.), cert. denied, 543 U.S. 978 (2004)(quoting the Hague Convention art. 1, §§ a-b).  See also Ruiz, 392 F.3d at 1250; Bekier v. Bekier, 248 F.3d 1051, 1053 (11th Cir. 2001); Lops v. Lops, 140 F.3d 927, 935 (11th Cir. 1998), cert. denied, 525 U.S. 1158 (1999).  Thus, a court considering a petition

---

[1] The Hague Convention effectively defines "children" as being under 16 years of age.  When a child attains the age of 16 years, the Hague Convention ceases to apply.  Hague Convention art. 4.

for the return of a child under the Hague Convention and ICARA "has jurisdiction to decide the merits only of the wrongful removal claim, not of any underlying custody dispute. . . . The Hague Convention is intended to 'restore the pre-abduction status quo and to deter parents from crossing borders in search of a more sympathetic court.'" Lops, 140 F.3d at 936 (quoting Friedrich v. Friedrich, 78 F.3d 1060, 1064 (6th Cir. 1996)). See also Ruiz, 392 F.3d at 1250; Furnes, 362 F.3d at 710.

The Hague Convention mandates the return of children to their circumstances prior to the abduction if one parent's removal or retention violated the custody rights of the other parent and was therefore "wrongful." Hague Convention art. 12; 42 U.S.C. § 11601(a)(4). The removal or retention of a child is "wrongful" where it (1) violates the "rights of custody" of the non-abducting person "under the law of the State in which the child was habitually resident immediately before the removal or retention," and (2) the rights of custody were actually being exercised at the time of the removal or retention, or would have been exercised but for the removal or retention. Hague Convention art. 3; Furnes, 362 F.3d at 711; Lops, 140 F.3d at 936 (citations omitted). Therefore, a petitioner establishes the elements of wrongful removal or retention by demonstrating by a preponderance of the evidence[2] that: (1) the habitual residence of the child immediately before

---

[2] 42 U.S.C. at § 11601(e)(1)(A).

the date of the allegedly wrongful removal or retention was in the country to which return is sought; (2) the removal or retention breached the petitioner's custody rights under the law of the child's habitual residence; (3) the petitioner was actually exercising or would have been exercising custody rights of the child at the time of his or her removal or retention; and (4) the child has not attained the age of 16 years. Ruiz, 392 F.3d at 1251; Lops, 140 F.3d at 936; Pesin v. Osorio Rodriguez, 77 F. Supp. 2d 1277, 1284 (S.D. Fla. 1999), appeal dismissed, 244 F.3d 1250, 1253 (11th Cir. 2001). If petitioner meets this burden, the child who is wrongfully removed or retained must be promptly returned. Lops, 140 F.3d at 936 (citing 42 U.S.C. § 11601(a)(4)).

The general rule that a wrongfully removed or retained child must be returned has six exceptions which excuse the return of the child. Hague Convention art. 12, 13, 20; Mendez Lynch v. Mendez Lynch, 220 F. Supp. 2d 1347, 1357-58 (M.D. Fla. 2002). A court is not bound to order the return of a child if respondent demonstrates by a preponderance of the evidence[3] that: (1) the person having care of the child was not actually exercising the custody rights at the time of removal or retention, Hague Convention art. 13a; or (2) the person having care of the child had consented to or subsequently acquiesced in the removal or retention of the child, Hague Convention art. 13a; or (3) "the child objects to being

---

[3] 42 U.S.C. at § 11601(e)(2)(B).

returned and has attained an age and degree of maturity at which it is appropriate to take account of its views." Hague Convention art. 13, unnumbered paragraph; or (4) the proceedings were commenced more than one year after the date of the wrongful removal or retention and "the child is now settled in its new environment." Hague Convention art. 12.  Additionally, a court is not bound to order the return of a child if respondent demonstrates by clear and convincing evidence[4] that: (5) there is a grave risk that the child's return would "expose the child to physical or psychological harm or otherwise place the child in an intolerable situation," Hague Convention art. 13b; or (6) return of the child would not be permitted by fundamental principles of the requested State relating to the protection of human rights and fundamental freedoms.  Hague Convention art. 20.  Even if an exception is established, the Court has discretion to order the return of a child if return would further the aims of the Hague Convention.  England v. England, 234 F.3d 268, 270-71 (5th Cir. 2000); Friedrich, 78 F.3d at 1067; Feder v. Evans-Feder, 63 F.3d 217, 226 (3rd Cir. 1995).

## II. Application of Legal Principles

**A. Petitioner's Case**:

**(1) Preliminary Matters**:

The two threshold issues of any Hague Convention case have been established in this case.  The evidence establishes that Thot

---

[4] 42 U.S.C. at § 11601(e)(2)(A).

was born on June 15, 1999, and Dana was born on November 18, 2002, in Chihuahua, Chihuahua, Mexico. Thus, both minor children are under 16 years of age. Additionally, the Hague Convention was entered into force between Mexico and the United States on October 1, 1991, Gonzalez v. Gutierrez, 311 F.3d 942, 945 n.2 (9th Cir. 2002), and thus was in effect prior to the removal of the child on or about March 1, 2006.

**(2) Children's Habitual Residence:**

Petitioner is required to prove the children's habitual residence by a preponderance of the evidence. Petitioner asserts that Mexico was the children's habitual residence at the time of their removal from Mexico. The legal principles that govern this determination were discussed at some length in Ruiz, 392 F.3d at 1252-55.

The evidence is clear that Chihuahua, Chihuahua, Mexico was the habitual residence of the children at the time of their removal. This is where both children were born. Other than an over-extended visit to Cape Coral, Florida, the children were always residents of Chihuahua, Chihuahua, Mexico, and they had been returned there from Cape Coral before respondent took them on March 1, 2006. No objective facts point to a change in habitual residence, and there is no evidence that the children's strong attachments to Mexico and minimal contacts with the United States have significantly changed.

**(3) Rights of Custody:**

Because the child's habitual residence at the time of removal was Chihuahua, Chihuahua, Mexico, the law of Chihaha, Mexico governs the decision as to whether custody rights existed at the time of removal. Miller v. Miller, 240 F.3d 392, 401 (4th Cir. 2001). Petitioner must establish by a preponderance of the evidence that the removal or retention breached her custody rights under the law of Chihuahua, Mexico.

General parental custody rights under Mexican law was summarized in "International Law - U.S./Mexico Cross-Border Child Abduction - The Need For Cooperation," New Mexico Law Review, 29 NMLR 289, 297-298 (1999). Here, both children were residing with petitioner at the time of their removal, and on June 14, 2006, a judge in Mexico awarded provisional custody of the children to petitioner. The Court finds that petitioner has established that the removal of the minor children breached her custodial rights under the law of Chihuaua, Mexico.

**(4) Petitioner Was Exercising Rights of Custody at Removal:**

Petitioner has the burden of showing by a preponderance of the evidence that he was exercising custody rights at the time of the removal. Lops, 140 F.3d at 936. While the Hague Convention does not define the "exercise" of rights of custody, the Sixth Circuit has stated that "[t]he only acceptable solution, in the absence of a ruling from a court in the country of habitual residence, is to

-7-

liberally find 'exercise' whenever a parent with *de jure* custody rights keeps, or seeks to keep, any sort of regular contact with his or her child." Friedrich, 78 F.3d at 1065. The court went on to "hold that, if a person has valid custody rights to a child under the law of the country of the child's habitual residence, that person cannot fail to 'exercise' those custody rights under the Hague Convention short of acts that constitute clear and unequivocal abandonment of the child." Id. at 1066. See also Furnes, 362 F.3d at 711; Pesin, 77 F. Supp. 2d at 1286-87.

Petitioner has established she was exercising her rights of custody at the time the children were removed. Petitioner had custody of the children during her separation from her husband, and issued the paperwork necessary for respondent to travel with the children. (Doc. #1, Exhibit C.) After the children's return, they continued to reside with petitioner until they were removed by respondent.

In sum, the Court concludes that petitioner has established her case by at least a preponderance of the evidence. The children are under 16 years of age; the children were habitually residents of Mexico at the time of removal; the removal of the children from Mexico and their retention in the United States violated petitioner's rights of custody under applicable Mexican law; and petitioner was exercising her rights of custody at the time of the removal and retention. Unless respondent establishes an exception, the children must be returned to Mexico.

**B. Exceptions to Return of Children**:

The six exceptions to the required return of a child are to be applied narrowly. <u>Rydder v. Rydder</u>, 49 F.3d 369, 372 (8th Cir. 1995); 42 U.S.C. § 11601(a)(4). Because respondent filed a *pro se* Answer, the Court considers all exceptions.

**(1) Not Exercising Rights of Custody**:

A court is not bound to order the return of a child if respondent demonstrates by a preponderance of the evidence that the person having care of the child was not exercising rights of custody at the time of the removal or retention of the child. Hague Convention art. 13a; 42 U.S.C. § 11603(e)(2)(B); <u>Furnes</u>, 362 F.3d at 711-12. The Court has already found that petitioner has established by a preponderance of the evidence that she *was* exercising his rights of custody regarding the children at the time of removal and retention. Accordingly, this exception has not been established by respondent.

**(2) Petitioner's Consent/Subsequent Acquiescence**:

A court is not bound to order the return of a child if respondent demonstrates by a preponderance of the evidence that the person having care of the child had consented to or subsequently acquiesced in the removal or retention of the child. Hague Convention art. 13a; 42 U.S.C. § 11603(e)(2)(B). There is no evidence that Petitioner consented to or acquiesced in the removal

of her children from Mexico or their retention in the United States. Therefore, this exception has not been established.

**(3) Wishes of the Children:**

A court is not bound to order the return of a child if respondent demonstrates by a preponderance of the evidence that "the child objects to being returned and has attained an age and degree of maturity at which it is appropriate to take account of its views." Hague Convention art. 13, unnumbered paragraph; 42 U.S.C. § 11603(e)(2)(A). This provides a separate and independent basis for a court to refuse to return a child to the country of habitual residency, Blondin v. Dubois, 238 F.3d 153, 166 (2d Cir. 2001), although like other exceptions it is narrowly applied. England, 234 F.3d at 272.

At ages seven and four, the children in this case have not attained an age or degree of maturity to take their views into account. E.g., Mendez Lynch, 220 F. Supp. 2d at 1361-62. Therefore, this exception does not apply. Additionally, there is no evidence as to the wishes of the children.

**(4) Child Well-Settled in New Environment:**

Article 12 of the Hague Convention requires that a court "shall order the return of a child forthwith" where there has been a wrongful removal or retention and less than one year has expired between the date of the wrongful removal or retention and "the date of the commencement of the proceedings before the judicial or

administrative authority of the Contracting State where the child is." Even if commencement begins more than one year thereafter, the child "shall" be returned unless it is demonstrated that "the child is now settled in its new environment." Thus, a court is not bound to order the return of a child if respondent demonstrates by a preponderance of the evidence that (a) the proceedings were commenced more than one year after the date of the wrongful removal or retention, and (b) "the child is now settled in its new environment." Hague Convention art. 12. The key dates under the Hague Convention are the dates of the wrongful removal or detention and "the date of the commencement of the proceedings before the judicial or administrative authority of the Contracting State where the child is." Hague Convention art. 12. Under ICARA the "commencement of proceedings" begins with the filing of a judicial petition. <u>Wojcik v. Wojcik</u>, 959 F. Supp. 413, 418-19 (E.D. Mich. 1997).

The Petition (Doc. #1) was filed in federal court on October 19, 2006. Therefore, the Court petition was filed within one year of Respondent's wrongful removal on or about March 1, 2006. The children have apparently now been removed from the Cape Coral, Florida area. Accordingly, this exception cannot be established by respondent.

    **(5) Grave Risk of Exposure to Physical or Psychological Harm or Intolerable Situation:**

A court is not bound to order the return of a child if respondent demonstrates by clear and convincing evidence that there

is a grave risk that the child's return would "expose the child to physical or psychological harm or otherwise place the child in an intolerable situation." Hague Convention art. 13 b; 42 U.S.C. § 11603(e)(2)(A). This exception therefore requires evaluation of the grave risk of physical harm to the children, psychological harm to the children, or if return would otherwise place the children in an intolerable situation. Like the other exceptions, this is a narrow exception. England, 234 F.3d at 270-71; Whallon v. Lynn, 230 F.3d 450, 459 (1st cir. 2000); Nunez-Escudero v. Tice-Menley, 58 F.3d 374, 376 (8th Cir. 1995).

The assessment focuses upon the children, and it does not matter if the respondent is the better parent in the long run, had good reason to leave his home in Mexico, or whether he will suffer if the child is returned to Mexico. Nunez-Escudero, 58 F.3d at 377. "The exception for grave harm to the child is not license for a court in the abducted-to country to speculate on where the child would be happiest." Friedrich, 78 F.3d at 1068. "A removing parent must not be allowed to abduct a child and then–when brought to court–complain that the child has grown used to the surroundings to which they were abducted." Friedrich, 78 F.3d at 1068.

This exception requires the alleged physical or psychological harm to be "a great deal more than minimal. Whallon, 230 F.3d at 459 (quoting Walsh v. Walsh, 221 F.3d 204, 218 (1st Cir. 2000)). Only severe potential harm to the child will trigger this Article 13b exception. Nunez-Escudero, 58 F.3d at 377 (quoting the Supreme

Court of Canada in <u>Thomson v. Thomson</u>, 119 D.L.R. 4th 253, 286 (Can. 1994)).  The harm must be greater than what is normally expected when taking a child away from one parent and passing the child to another parent.  <u>Whallon</u>, 230 F.3d at 459.  The harm of separating a child from the primary caretaker does not satisfy the Article 13b exception.  <u>Rydder v. Rydder</u>, 49 F.3d at 372; <u>Nunez-Escudero</u>, 58 F.3d at 376.  Adjustment problems that would attend the relocation of most children is not sufficient.  <u>Friedrich</u>, 78 F.3d at 1067.

Respondent's Answer (Doc. #5) stated that he had removed his children from Mexico because "my wife is living with her lover, even though we're still married, in the day she's claiming I took the children, her lover told me to leave her alone and to give her all she wanted in the divorce papers or he would hurt my kids and me, do under the Chihuahua, Mexico's law which says I have the right as a parent to be with my kids I took them away from a potential danger to their integrity."  Assuming the assertion is true, the Court finds it insufficient to establish that the children would be exposed to the physical or psychological harm contemplated by the exception if they were returned to Mexico.

The "intolerable situation" portion of the exception encompasses evaluation of the people and circumstances awaiting the children in the country of their habitual residence.  The Court may consider the environment in which the children will reside upon returning to Mexico.  <u>Nunez-Escudero</u>, 58 F.3d at 377.  The United

-13-

States Department of State has stated that an "intolerable situation" under Article 13b was not intended to encompass situations such as return to a home where money is in short supply, or where educational or other opportunities are more limited than in the new country. It gave as an example of "intolerable situation" where the custodial parent sexually abuses a child. Hague Convention, 51 Fed. Reg. 10494-01, 10510 (March 26, 1986).

> In other words, at one end of the spectrum are those situations where repatriation might cause inconvenience or hardship, eliminate certain educational or economic opportunities, or not comport with the child's preferences; at the other end of the spectrum are those situations in which the child faces a real risk of being hurt, physically or psychologically, as a result of repatriation. The former do not constitute a grave risk of harm under Article 13(b); the latter do.

Blondin, 238 F.3d at 162. In Friedrich, the Sixth Circuit indicated that the grave risk exception applies only (1) when returning the child meant sending her to a zone of war, famine or disease, or (2) in cases of serious abuse or neglect, or extraordinary emotional dependence, when the court in the country of habitual residence for whatever reasons may be incapable or unwilling to give the child adequate protection. Friedrich, 78 F.3d at 1069.

Here, there is no evidence that either the conditions in Mexico in general or the living conditions at the home of petitioner come anywhere close to satisfying the "intolerable conditions" exception. Respondent has not shown that this exception applies.

**(6) Human Rights and Fundamental Freedoms:**

A court is not bound to order the return of children if respondent demonstrates, by clear and convincing evidence, that return of the children would not be permitted by fundamental principles of the requested State relating to the protection of human rights and fundamental freedoms. Hague Convention art. 20. Respondent has failed to produce any evidence to establish he comes within this exception.

### III. Conclusion

The Court finds by at least a preponderance of evidence that petitioner has met her burden under the Hague Convention and ICARA of establishing that: (1) the children habitually resided in Mexico prior to their removal on March 1, 2006; (2) Respondent breached petitioner's custodial rights under Mexican law by removing the children from Mexico and retaining them in Florida; and (3) Petitioner possessed and was exercising custodial rights at the time of the child's removal. Additionally, the Court finds that respondent has not established any exception. As the Eleventh Circuit has stated, "The Hague Convention is intended to restore the pre-abduction status quo . . . ." Lops, 140 F.3d at 936. Therefore, the children must be returned to Mexico.

Accordingly, it is now

**ORDERED AND ADJUDGED** that:

1. Petitioner's Petition for Return of Minor Children (Doc. #1) is **GRANTED**.

2. Respondent Javier Luna Escayola is ordered to immediately return Dana Luna Narvaez and Thot Luna Narvaez to Chihuahua, Chihuahua, Mexico.

3. Respondent Javier Luna Escayola shall return Dana Luna Narvaez and Thot Luna Narvaez to Chihuahua, Chihuahua, Mexico at respondent's expense.

4. The Clerk shall enter judgment accordingly and close the case.

**DONE AND ORDERED** in Fort Myers, Florida this ___28th___ day of December, 2006.

JOHN E. STEELE
United States District Judge

Copies:
Counsel of Record